OPINION
{¶ 1} These are appeals from two judgments of the Franklin County Court of Common Pleas, Division of Domestic Relations. The first judgment granted the parties, appellant, Dawn Marie Apps, and appellee, Bret Stephen Apps, a divorce; ordered a division of the marital assets and liabilities; designated appellee the residential parent and legal custodian of the parties' minor children; and awarded child support to appellee. The second judgment denied appellant's Civ.R. 60(B) motion for relief from judgment.
 {¶ 2} Appellant sets forth the following assignments of error:
[1]. The trial court committed reversible error by failing to grant defendant's request for a continuance and for failing to conclude a decision as to defendant's counterclaim.
[2]. The trial court abused its discretion and committed reversible error when it approved a decree of divorce that did not comport to the testimony elicited at trial.
[3]. The trial court abused it[s] discretion and committed reversible error by allowing for a child support calculation to be based upon critical financial data not presented and/or established at the trial level.
 {¶ 3} The parties were married in February 1998. Two children were born as issue of the marriage, Bret Stephen Apps, Jr. (d.o.b. June 3, 1998) and Olivia Dawn Apps (d.o.b. August 16, 1999).
 {¶ 4} On August 15, 2000, appellee filed a complaint for divorce. On October 26, 2000, appellant, who resided in Florida with the children, filed a motion requesting permission to file an answer out-of-rule instanter, along with her proposed answer. By entry dated the same day, the trial court entered an order granting appellant's motion. Four days later, on October 30, 2000, appellant filed a counterclaim for divorce.
 {¶ 5} Pursuant to temporary orders issued by a magistrate on November 8, 2000, appellant was designated the temporary residential parent and legal guardian of the children. Appellee was granted visitation, to be supervised by appellant, and was ordered to pay temporary child support.
 {¶ 6} Trial of the matter was held on October 22, 2001, February 4, 5 and 6, and August 26, 2002. For reasons discussed infra, appellant did not attend the August 26, 2002 proceedings. On August 29, 2002, the trial court filed its judgment entry-decree of divorce. The parties' marital and individual liabilities were divided consistent with the parties' oral stipulation. The court divided the marital assets, named appellee residential parent and legal custodian of the minor children, granted appellant companionship rights, and ordered appellant to pay child support pursuant to the child support guidelines. On September 13, 2002, the court granted appellee's emergency ex parte motion to modify appellant's companionship rights to supervised companionship.
 {¶ 7} On September 16, 2002, appellant filed a Civ.R. 52 motion for findings of fact and conclusions of law.[1] On September 25, 2002, appellant filed a Civ.R. 60(B) motion for relief from judgment. Appellee filed a memorandum contra appellant's Civ.R. 60(B) motion on January 27, 2002.
 {¶ 8} On September 30, 2002, appellant filed a notice of appeal from the August 29, 2002 judgment entry-decree of divorce. That appeal was docketed as 02APF09-1072. On November 19, 2003, this court remanded 02APF09-1072 pending the trial court's resolution of appellant's Civ.R. 60(B) motion. On February 20, 2003, the trial court entered judgment denying appellant's Civ.R. 60(B) motion. On March 12, 2003, appellant filed a notice of appeal from the trial court's entry denying the Civ.R. 60(B) motion. That appeal was docketed as 03APF03-272. On the same day, appellant moved this court to consolidate the two cases. This court granted appellant's motion on March 17, 2002.
 {¶ 9} On June 3, 2003, appellee filed a motion to dismiss case No. 03APF03-242 on the ground that appellant had failed to prosecute that appeal. In particular, appellee maintained that because appellant's consolidated brief did not address the trial court's denial of her Civ.R. 60(B) motion, appellant was no longer seeking relief from that judgment. Appellant filed no response to appellee's motion to dismiss.
 {¶ 10} For the following reason, we overrule appellee's motion to dismiss. In her first assignment of error, appellant argues that the trial court erred in failing to grant a continuance of the August 26, 2002 trial date. Appellant's failure to attend the August 26, 2002 hearing is also the subject of appellant's Civ.R. 60(B) motion. Because the two issues are related, appellant also argues that the trial court erred in denying her Civ.R. 60(B) motion. Accordingly, appellee's contention that appellant has failed to prosecute her appeal of the denial of her Civ.R. 60(B) motion is without merit.
 {¶ 11} Turning to the merits of appellant's argument, we note that when trial commenced in this matter on October 22, 2001, both parties were present and represented by counsel. Further hearing was set for October 25, 2001. Over objection, appellant was granted a continuance to mid-January 2002. Prior to that hearing date, the court, on its own motion, continued the case. The hearing continued on February 4, 5 and 6, 2002. Once again, both parties were present and represented by counsel. When the February 6, 2002 hearing concluded, counsel for appellant was in the course of conducting re-direct examination of appellant. Further hearing was set for April 26, 2002, and on April 24, 2002, appellant requested another continuance. Over objection, the trial court continued the case to August 26, 2002. The record indicates that appellant and her counsel were notified of the rescheduled hearing date.
 {¶ 12} On June 18, 2002, appellant's counsel filed a motion to withdraw from the case, citing appellant's failure to provide information and documentation necessary for trial preparation. The trial court granted the motion for withdrawal on June 19, 2002.
 {¶ 13} At the August 26, 2002 hearing, appellee was present and represented by counsel. The trial court noted on the record that appellee had contacted appellant at her home in Florida the morning of trial and was told by appellant that she would not attend the hearing. The court further noted that the matter had been continued to August 26, 2002, with the input of both parties and counsel and that appellant had actual notice of the continuation date, but had failed to appear. The court then permitted appellee to proceed with his case on an uncontested basis. During rebuttal examination, appellee testified that appellant told him earlier that morning that she would not be attending the trial; when appellee requested an explanation, appellant averred only that she had written a letter to the trial judge.
 {¶ 14} The letter referenced in appellee's rebuttal testimony apparently provided the impetus for appellant's Civ.R. 60(B) motion. In that motion, appellant alleged that she did not attend the hearing on August 26, 2002, because she expected the hearing to be continued as a result of an ex parte letter she sent to the trial judge prior to the hearing. In an affidavit attached to the motion, appellant attested that although she was aware that further trial of the case had been scheduled for August 26, 2002, she was without resources to travel to Ohio to attend the proceedings. Accordingly, on August 14, 2002, she sent a letter to the trial judge requesting a continuance. Appellant averred that she assumed she would be granted a continuance based upon the fact that she resided in Florida, was without counsel, and was not familiar with the law. She further asserted that she did not realize that the court had not granted her request for a continuance and had proceeded with the August 26, 2002 hearing until her children were removed by court order from her custody on August 30, 2002.
 {¶ 15} Appellant attached to her affidavit a photocopy of the August 14, 2002 letter. Therein, appellant did not expressly request a continuance of the August 26, 2002 hearing date. Rather, appellant indicated that she could not afford to return to Ohio and requested that the court order appellee to pay her travel expenses if she were forced to attend further proceedings. The balance of the letter consisted mainly of disparaging comments about appellee and a plea to name appellant the sole residential parent of the parties' two children. Appellant also attached a photocopy of a certified mail receipt evidencing that a document sent to the trial judge on August 15, 2002, was received on August 26, 2002.
 {¶ 16} In considering appellant's Civ.R. 60(B) motion, the trial court construed the facts as alleged by appellant as asserting a claim for relief under Civ.R. 60(B)(1), excusable neglect, in failing to attend the August 26, 2002 trial. The court found that even if the facts as alleged by appellant were proven true, such facts failed to establish excusable neglect. In particular, the court noted that appellant did not deny knowledge of the rescheduled trial date, but simply claimed that she did not understand that her request for a continuance had not been granted. Regarding the request for a continuance, the court further observed that appellant had been specifically instructed, at the time of her previous continuance, that she would not be granted further continuances. The court determined that appellant's failure to appear for a trial of which she had notice demonstrated a complete disregard for the legal system and thus could not be considered excusable neglect.
 {¶ 17} The court further observed that appellant was not completely without opportunity to present evidence in the case. The court noted that several days of trial preceded the August 26, 2002 trial date, during which appellant was provided the opportunity to present evidence, including her own testimony. The court indicated that it gave due consideration to all the evidence presented and afforded the evidence the weight the court thought appropriate.
 {¶ 18} As previously noted, appellant contends that the trial court erred in failing to grant a continuance of the August 26, 2002 hearing and in denying her Civ.R. 60(B) motion for relief from judgment. For several reasons, we find no merit to appellant's contention.
 {¶ 19} Assuming arguendo that appellant's ex parte letter could be construed as a motion for continuance, the record is devoid of evidence that the trial judge was aware of the letter at the time the hearing commenced on August 26, 2002. When discussing appellant's failure to appear, the trial judge gave no indication that he was aware of the letter. Further, even if the trial judge was aware of the letter, there is no evidence that the trial judge accepted it for filing. Appellant concedes that she sent the letter directly to the trial judge and did not file a copy with the clerk of court. Civ.R. 5(E) sets out the procedure for filing pleadings and other papers as follows: "The filing of pleadings and other papers with the court, as required by these rules, shall be made by filing them with the clerk of court, except that the judge may permit the papers to be filed with the judge, in which event the judge shall note the filing date on the papers and forthwith transmit them to the office of the clerk." While Civ.R. 5(E) grants a judge discretion to forward documents received by him or her to the clerk's office for filing, there is no requirement that he or she do so. The letter contains no filing date (other than the date which corresponds with the filing of appellant's Civ.R. 60[B] motion), and does not appear on the court's journal as having been filed with the clerk of court. Thus, we must presume that if the trial judge was aware of the letter, he did not accept it for filing.
 {¶ 20} Further, even if the trial judge had accepted the letter for filing, the trial judge would have been required to overrule it due to appellant's failure to comply with Civ.R. 5(A) and (D). Civ.R. 5(A) requires every written motion, other than one that can be granted ex parte, to be served upon each of the parties or, if they are represented, upon their counsel. Civ.R. 5(D) provides in pertinent part that: "[p]apers filed with the court shall not be considered until proof of service is endorsed thereon or filed separately." No evidence suggests that appellant served either appellee or his counsel with the letter. Even had the judge accepted the letter for filing, he was precluded from ruling on it until proof of service had been filed.
 {¶ 21} Further, Loc.R. 3(G) of the Franklin County Court of Common Pleas, Division of Domestic Relations, requires that motions for continuance must be on a form promulgated by the court and contain the reason for the request, the filing date of the case and the number of previous continuances. In addition, a motion for continuance must "[r]eflect the approval of opposing counsel * * * unless otherwise excused by the judge." Appellant's letter did not comply with the form and content requirements for motions for continuance in domestic court.
 {¶ 22} Finally, assuming arguendo that appellant had complied with all the above-noted provisions and that the trial judge had been aware of the letter and accepted it for filing prior to the hearing, we glean from the court's discussion in its decision on appellant's Civ.R. 60(B) motion that the court would not have granted a continuance. The grant or denial of a continuance is left to the sound discretion of the trial court.State v. Unger (1981), 67 Ohio St.2d 65, 67. An appellate court may not reverse the denial of a continuance absent an abuse of discretion. Id. "The term `abuse of discretion' connotes more than an error of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219. To constitute sufficient grounds for a continuance due to the absence of a party, it must appear that the absence is unavoidable and not voluntary, that the party's presence at trial is necessary, that the application is made in good faith, and that the party will be able to attend court at some future time. State ex rel. Buck v. McCabe (1942), 140 Ohio St. 535, paragraph two of the syllabus. In the instant case, appellant's absence appeared to be voluntary, as there is no evidence to suggest that she was physically unable to appear in court. In her letter, appellant averred only that she could not afford to return to Ohio. Appellant did not indicate when she might be able to attend further proceedings if the continuance was granted. Further, appellant's request that the court order appellee to pay her travel expenses if she were forced to attend further proceedings suggests that appellant would not attend further proceedings absent financial assistance from appellee.
 {¶ 23} Further, there is no indication in the record that appellant contacted the court to inquire as to the status of the request. Appellant contends that, as a pro se litigant, she "did not know any better" and just assumed the court would grant a continuance. However, appellant's pro se status does not excuse her failure to inquire about the status of the case. A pro se litigant "is held to the same rules, procedures and standards as those litigants represented by counsel and must accept the results of their own mistakes and errors." Dornbirer v. Paul (Aug. 19, 1997), Franklin App. No. 96APE11-1560. Moreover, given that the allocation of parental rights and responsibilities was a contested issue in the case and that appellant had been given no indication by the court that the August 26, 2002 hearing had been continued, appellant's failure to appear at the scheduled hearing, or at least inquire as to the status of the request for continuance, is unjustifiable.
 {¶ 24} Further, as the trial court noted in ruling on appellant's Civ.R. 60(B) motion, appellant had been adequately notified of the date and time of the hearing and was well aware of the court's unwillingness to grant further continuances. In addition, the court noted that appellant had participated in the preceding trial dates and had testified on her own behalf. The court further indicated that it had considered all the evidence presented, including that provided by appellant, prior to issuing the judgment entry-decree of divorce. As such, we cannot find that appellant suffered any prejudice as the result of the trial court's failure to grant a continuance and to proceed ex parte in appellant's absence.
 {¶ 25} We also find that the trial court did not abuse its discretion in overruling appellant's Civ.R. 60(B) motion for relief from judgment. Civ.R. 60(B) provides, in pertinent part:
On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order or proceeding for the following reasons: (1) mistake, inadvertence, surprise or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(B); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment has been satisfied, released or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (5) any other reason justifying relief from the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2) and (3), not more than one year after the judgment, order or proceeding was entered or taken. * * *"
 {¶ 26} To prevail on a motion for relief from judgment, the moving party must establish that: (1) the party has a meritorious defense or claim to present if relief is granted; (2) the party is entitled to relief under one of the grounds listed in Civ.R.60(B)(1) through (5); and (3) the motion is made within a reasonable time, and, where the grounds of relief are Civ.R. 60(B)(1), (2), or (3), not more than one year after the judgment order or proceeding was entered or taken. GTE AutomaticElec., Inc. v. ARC Industries (1976), 47 Ohio St.2d 146, paragraph two of the syllabus. The decision whether to grant a motion for relief from judgment is within the sound discretion of the trial court and may be reversed only upon a showing of an abuse of discretion. Rose ChevroletInc. v. Adams (1988), 36 Ohio St.3d 17, 20.
 {¶ 27} Appellant contended in her motion that she was entitled to relief pursuant to Civ.R. 60(B)(1), (2), (3) and (5). We agree with the trial court's finding that appellant failed to set forth any factual allegations pertaining to newly discovered evidence or fraud, and, as such, failed to allege sufficient grounds for relief pursuant to Civ.R. 60(B)(2) and (3). We further agree with the trial court's finding that the facts as alleged by appellant indicate a claim for relief under Civ.R. 60(B)(1), i.e., excusable neglect, and, accordingly, appellant could not utilize Civ.R. 60(B)(5) as a substitute for the more specific provision. Caruso-Ciresi, Inc. v. Lohman (1983), 5 Ohio St.3d 64, 66. For the reasons set forth in our discussion regarding the trial court's alleged error in failing to grant a continuance of the August 26, 2002 hearing, we find that the trial court did not abuse its decision in denying appellant's motion on grounds that appellant had failed to establish a claim for relief based upon excusable neglect pursuant to Civ.R. 60(B)(1).
 {¶ 28} Appellant next contends that the trial court erred to her prejudice by failing to consider her counterclaim. At the outset of the August 26, 2002 hearing, the court averred, after checking the record, that appellant had not filed a counterclaim. Thereafter, the court permitted appellee to proceed with his case on an uncontested basis. Appellant contends that the court erred both in stating that she did not file a counterclaim and in failing to consider it. Appellee responds, and we agree, that the trial court correctly found that appellant had not filed a counterclaim, as the counterclaim was never properly filed.
 {¶ 29} Appellant was granted permission by the trial court to file her answer out of rule. Appellant's answer did not contain a counterclaim. Four days later after filing her answer, appellant filed a counterclaim demanding a divorce, an equitable division of the marital assets, spousal support, an allocation of parental rights and responsibilities designating her the residential parent and legal custodian of the children, and child support. Civ.R. 13(A) provides that:
A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction. * * *
 {¶ 30} Here, appellant had a claim against appellee at the time she served her answer and that claim arose out of the same transaction or occurrence as appellee's claims. As such, Civ.R. 13(A) required appellant to include such a counterclaim in her answer. Goldfarb v. The RobbReport, Inc. (1991), 77 Ohio App.3d 362, 366. Given the compulsory nature of appellant's counterclaim, the trial court did not err in concluding that appellant did not file a counterclaim, because it was not included in her answer.
 {¶ 31} Further, even if appellant had properly filed the counterclaim, the trial court was not obliged to resolve it. The trial court's judgment entry, which resolved the issues set forth in appellant's counterclaim, rendered appellant's counterclaim moot. SeeAnderson v. Anderson (July 7, 1992), Hocking App. No. 91CA1; Biehl v.Biehl (June 25, 1996), Washington App. No. 95CA14.
 {¶ 32} Appellant also contends that the trial court abused its discretion by rendering judgment where the record does not contain a certificate evidencing that the parties attended an educational seminar for divorcing parents as required by Loc.R. 26 of the Franklin County Common Pleas Court, Division of Domestic Relations.
 {¶ 33} It is axiomatic that any issue not objected to at trial cannot later be raised on appeal. "[W]e have long recognized, in civil as well as criminal cases, that failure to timely advise a trial court of possible error, by objection or otherwise, results in a waiver of the issue for purposes of appeal." Goldfuss v. Davidson (1997),79 Ohio St.3d 116, 121. Neither appellant nor her attorney raised this issue at trial; appellant is therefore barred from raising it on appeal.
 {¶ 34} Moreover, appellant's contention is without merit. Loc.R. 26 of the Franklin County Common Pleas Court, Division of Domestic Relations, addresses parenting seminars required of divorcing parents of minor children. Although the rule requires that each parent attend this seminar within 45 days of the filing of the action or service of process, there is no requirement that the parties file a certificate with the court evidencing attendance at the seminar. Since the rule does not require the filing of a certificate, the trial court's decision to grant a divorce without a certificate of completion in the record is not an abuse of discretion. Further, appellant has failed to provide any evidence demonstrating that either party failed to attend the seminar. The first assignment of error is not well-taken.
 {¶ 35} By the second assignment of error, appellant contends that the trial court abused its discretion in its valuation and division of certain marital property.
 {¶ 36} When reviewing a trial court's decision in a domestic relations action, an appellate court examines the decision to see if it was fair, equitable, and in accordance with the law. Kaechele v.Kaechele (1988), 35 Ohio St.3d 93, 97. In making this determination, an appellate court may not substitute its judgment for that of the trial court, unless the trial court's decision constitutes an abuse of discretion. Id. at 94.
 {¶ 37} The division of marital property is governed by R.C. 3105.171. Marital property includes personal property currently owned by either or both of the spouses. R.C. 3105.171(A)(3)(a)(i). Pursuant to R.C.3105.171(C)(1), the division of marital property must be equal, unless the trial court determines that an equal division would be inequitable.Terry v. Terry (1994), 99 Ohio App.3d 228, 232. The facts and circumstances of each case dictate what is an equitable division of marital property. Id. R.C. 3105.171(C)(1) requires a trial court to consider all relevant factors, including those set forth in R.C.3105.171(F). "An exhaustive itemization of every factor is unnecessary; however, the court's decision must clearly indicate that the factors were considered before the property division was made." Hightower v.Hightower, Franklin App. No. 02AP-37, 2002-Ohio-5488, at ¶ 21, citingCasper v. DeFrancisco (Feb. 19, 2002), Franklin App. No. 01AP-604. A trial court's failure to consider the R.C. 3105.171(F) factors when making a division of marital property constitutes an abuse of discretion. Id.
 {¶ 38} Further, in making an equitable division of property, a trial court must first determine the value of marital assets. Id. at ¶ 22. Although a trial court enjoys broad discretion in determining the value of a marital asset, such discretion is not without limit. An appellate court's duty is not to require the adoption of any particular method of valuation, but to determine whether, based upon all the relevant facts and circumstances, the court abused its discretion in arriving at a value. James v. James (1995), 101 Ohio App.3d 668, 681. A trial court must have a rational evidentiary basis for assigning value to marital property. McCoy v. McCoy (1993), 91 Ohio App.3d 570, 576-578.
 {¶ 39} Appellant challenges the trial court's valuation and division of three specific items of marital property. In its judgment entry, the court found that the parties acquired "various marital household goods and furnishings during their marriage, with an approximate free and clear valuation in excess of $20,000.00." (Judgment entry at 3.) Among the household goods and furnishings to which the court referred was a big-screen television set, a three-piece leather sectional sofa, and a six-piece wood dinette set. The court further found that appellant unilaterally removed all the household goods and furnishings, including the three contested items, from the marital residence when she relocated to Florida in May 2000. The court found that the purchase price of the television set was $2,500, the purchase price of the sofa was $4,000, and the purchase price of the dinette set was $2,000. The court awarded these items to appellee, finding them to have a combined replacement value of $8,500. The court noted that although the items did not constitute exactly one-half of the marital household goods and furnishings, they represented a fair and equitable distribution of the marital household goods and furnishings that were removed by appellant from the marital residence. The court ordered that appellant either deliver the items to appellee, or, in the event the items had been disposed of, tender the sum of $8,500 to appellee.
 {¶ 40} Upon review of the trial court's decision, we find no indication that the trial court considered the factors set forth in R.C.3105.171(F) in dividing the challenged marital property. Further, we find no rational evidentiary basis in the record to support the trial court's valuation of the property. Appellee testified as follows:
Q. If you put an approximate dollar figure on all the stuff, I'm not talking about the knickknacks, but the big ticket items —
A. Probably $12,000.
Q. For everything?
A. For the TV, for the sectional couch, the table, and the king sized bed.
Q. All right. Now were there other items of furniture in your household before they relocated from Columbus to Florida?
A. Can you repeat that question for me?
Q. I'm sorry. Was there other furniture other than —
A. Than the ones you just mentioned, yes.
Q. All right. If you were to put a dollar figure on the total, on the collective whole of all these items, could you approximate the replacement value?
A. $30,000. I don't know, somewhere in that range.
Q. I mean that's just a rough guesstimate?
A. Yes. (Tr. Vol. I, 174-175.)
 {¶ 41} Appellant testified that she sold the television set for $500, the sofa for $500 and the dining room set for $400, which she opined was the fair market value of the items. She further testified that the purchase price of the television set was between $1,500 and $1,700. She offered no testimony with regard to the purchase price of either the sofa or the dinette set.
 {¶ 42} No competent, credible evidence supports the trial court's findings. It appears that the trial court found the purchase price and the replacement value of the items to be identical. No sales receipts or other documentary evidence were presented at trial establishing the purchase price of any of the three contested items. As we have noted, the only testimony regarding the purchase price of any of the items was offered by appellee, who testified that the television set was purchased for $1,500 to $1,700. Further, it is unclear whether appellee's opinion as to the $12,000 "approximate dollar value" of the "big ticket" items represented the purchase price of the items, the fair market value of the items, or some other valuation. In addition, appellee's $12,000 valuation appears to include a king-sized bed in addition to the three contested items. Appellee offered the only testimony regarding replacement value. However, his averment as to replacement value appears to include all of the marital property removed by appellant when she relocated to Florida. Appellee did not opine specifically as to the replacement value of the television set, sofa or dinette set.
 {¶ 43} Having found no indication that the trial court considered the factors set forth in R.C. 3105.171(F) and having found no rational evidentiary basis to support the trial court's findings, we conclude that the trial court abused its discretion in its valuation and division of the marital property. Accordingly, the second assignment of error is well-taken.
 {¶ 44} By the third assignment of error, appellant contends that the trial court abused its discretion in imputing income of $18,000 to appellant for purposes of calculating child support. Appellant further contends that no evidence supports the trial court's decision allowing appellee to include child care and health insurance expenses in the child support calculation.
 {¶ 45} The testimony at the hearing established that by agreement of both parties, appellant had not worked outside the home since the birth of the parties' first child in June 1998. Prior to leaving the workforce, appellant was employed as a customer service representative for a medical company. No evidence was offered establishing appellant's salary during the time she was employed.
 {¶ 46} R.C. 3119.01 provides that "income," for purposes of determining a child-support order, consists of the sum of the gross income of the parent and any "potential income" of the parent if voluntarily unemployed or underemployed. Whether a parent is voluntarily unemployed or underemployed and the amount of "potential income" to be imputed to a child support obligor are determinations within the trial court's discretion that will be upheld absent an abuse of discretion.Rock v. Cabral (1993), 67 Ohio St.3d 108, syllabus.
 {¶ 47} In Marker v. Grimm (1992), 65 Ohio St.3d 139, the Supreme Court of Ohio held that "[t]he terms of R.C. 3113.215 are mandatory in nature and must be followed literally and technically in all material respects." Id. at paragraph two of the syllabus. We note that R.C. 3113.215
was repealed effective March 22, 2001, and was replaced by R.C. 3119.01. Because the provisions of R.C. 3119.01 are comparable to those in R.C.3113.215, the court's statements regarding R.C. 3113.215 apply to R.C.3119.01.
 {¶ 48} Before a trial court may impute income to a parent, the court must make a finding that the parent is voluntarily unemployed or underemployed. Leonard v. Erwin (1996), 111 Ohio App.3d 413, 417; Clarkv. Smith (1998), 130 Ohio App.3d 648, 663. Moreover, once a party is found to be voluntarily unemployed or underemployed, the potential income to be imputed to that party must be determined in accordance with the considerations listed in R.C. 3119.01(C)(11). Consideration of the factors set forth in R.C. 3119.01(C)(11) is mandatory. The trial court's failure to consider these factors constitutes an abuse of discretion.Badovick v. Badovick (1998), 128 Ohio App.3d 18, 23.
 {¶ 49} In the instant case, the trial court abused its discretion by ordering child support based on income imputed to appellant. In its judgment entry, the trial court summarily imputed gross income of $18,000 to appellant. The trial court did not make an explicit finding that appellant was voluntarily unemployed or underemployed prior to imputing potential income to her. Further, the judgment entry contains no indication that the trial court considered any of the factors set forth in R.C. 3119.01(C)(11). Because it clearly failed to make a finding that appellant was voluntarily unemployed or underemployed and failed to consider the R.C. 3109.01(C)(11) factors, the trial court abused its discretion in imputing income to appellant. Westendorf v. Westendorf,
Hamilton App. No. C-020804, 2003-Ohio-5955, at ¶ 12; Moore v. Moore
(Aug. 1, 2001), Wayne App. No. 00CA0065.
 {¶ 50} Appellee argues that the trial court's imputation of $18,000 income can be attributed to a combination of minimum wage income and gift income. Appellee's contention is based upon pure speculation. As we have noted, the trial court made no finding as to whether appellant was voluntarily unemployed or underemployed and gave no rationale for imputing $18,000 in income to appellant.
 {¶ 51} Appellant further contends that no evidence supports the trial court's inclusion of health insurance costs and child care expenses in the child support worksheet. R.C. 3119.022 permits a credit against a parent's annual child support obligation for both "[a]nnual child care expenses for children who are the subject of this order that are work-, employment training-, or education-related, as approved by the court or agency (deduct tax credit from annual cost, whether or not claimed)," and "[m]arginal, out-of-pocket costs, necessary to provide for health insurance for the children who are the subject this order." In its decision, the trial court found that appellee provides health insurance for the children at a cost of $2,076 per year; that amount is included in the child support worksheet. Contrary to appellant's contention, both the trial court's finding and the inclusion of health insurance costs in the child support worksheet are supported by competent, credible evidence. Appellee testified that he pays $2,076 per year for health insurance for the children.
 {¶ 52} With regard to child care expenses, appellee testified that, if he were designated the residential parent of the children, the children would have to be placed in daycare two days a week to accommodate his work schedule. In the judgment entry, the trial court found that appellee would incur $6,696 in child care expenses. The child support worksheet, however, includes child care expenses of only $5,736. The trial court's judgment entry does not explain how it arrived at either amount nor does it explain the discrepancy in the two amounts. Appellee offers no suggestion as to the origin of the figures, nor how the two figures can be reconciled. Because the trial court does not explain how it arrived at either amount or why the two amounts differ, the matter must be remanded for further proceedings. The third assignment of error is well-taken.
 {¶ 53} For the foregoing reasons, appellant's first assignment of error is overruled, and the second and third assignments of error are sustained. Accordingly, the trial court's judgment as to 02AP-1072 is reversed and remanded for further proceedings in accordance with law and consistent with this opinion. The trial court's judgment as to 03AP-242 is affirmed.
Judgment reversed and cause remanded in case No. 02AP-1072; judgment affirmed in case No. 03AP-242; and appellee's motion to dismiss denied.
LAZARUS and WATSON, JJ., concur.
DESHLER, J., retired, of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.
[1] There is no indication in the record that the trial court addressed appellant's Civ.R. 52 motion. Although appellant does not challenge the trial court's failure to address the motion, we feel obliged to note that when a court issues findings of fact and conclusions of law in either a judgment entry or opinion, the court has complied with Civ.R. 52 even if a party requests separate findings and conclusions. Stone v. Davis
(1981), 66 Ohio St.2d 74, 84-85. In the judgment entry-decree of divorce, the court entered findings of fact and conclusions of law with regard to the issues before it. Although the better practice would have been to address the Civ.R. 52 motion by entering the findings of fact and conclusions of law as requested, or stating on the record that the judgment entry was sufficient to satisfy the requirement of findings of fact and conclusions of law, in the instant case, we find that the court's judgment is sufficient to comply with the requirement of findings of fact and conclusions of law pursuant to Civ.R. 52.