[Cite as *Slaughter v. Hoover-Grier*, 2017-Ohio-2770.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Darius T. Slaughter, Jr., | : | |
| Plaintiff-Appellee, | : | |
| | | No. 16AP-486 |
| v. | : | (C.P.C. No. 15JU-7543) |
| Jasmyn K. Hoover-Grier, | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on May 11, 2017

**On brief:** *Don Roberts Law Offices*, and *David R. Plumb*, for
appellant. **Argued:** *David R. Plumb.*

APPEAL from the Franklin County Court of Common Pleas,
Division of Domestic Relations, Juvenile Branch

HORTON, J.

{¶ 1} Jasmyn Hoover-Grier ("Jasmyn") appeals from the entry of the Franklin
County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch,
overruling her objections to a magistrate's decision to recalculate her income on a child
support order and deny her request to retroactively date the order. For the reasons set
forth below, we reverse and remand.

I. FACTUAL AND PROCEDURAL BACKGROUND

{¶ 2} A.H. was born to Jasmyn on January 26, 2012. The Franklin County Child
Support Enforcement Agency ("CSEA") issued an initial administrative order for child
support and medical support on May 26, 2015. The CSEA determined that Darius
Slaughter ("Darius") was the father of A.H. and had a duty of support as the child support
obligor. The order required Darius to pay child support in the amount of $850.84 per
month during any months in which A.H. was covered under private health insurance, or

$909.19 per month during periods of non-coverage. The monthly amounts were calculated on a child support computation worksheet attached to the order and were based on annual gross income amounts of $21,164 for Darius and $9,391.20 for Jasmyn. The worksheet listed an adjustment to Jasmyn's income based on annual child care expenses in the amount of $8,341.20. The order also informed the parties of the right to object by filing an action under R.C. 2151.231. (May 26, 2015 Order.)

{¶ 3} Darius objected by filing a form captioned "Complaint to Set Support (Objection to CSEA Administrative Order)" in the trial court on June 12, 2015. His objection stated the following: "I disagree with the monthly child support payment and would like to file for objection." (Compl.)

{¶ 4} Jasmyn filed an "Answer/Cross-Claim" on June 24, 2015, stating the following objection: "I object because I want the support order to be from the day [A.H.] was born. He knew about her before then and was getting her since that day." (Answer.)

{¶ 5} The magistrate held a hearing on the parties' objections on August 10, 2015. Jasmyn was not represented by counsel. Because Darius did not appear, the magistrate dismissed his objection without prejudice and stated that she would "proceed on" Jasmyn's objection. (Aug. 10, 2015 Tr. at 5.)

{¶ 6} At the hearing, Jasmyn testified that she worked between 20 and 30 hours each week at a retail store where she was paid $8.60 an hour and that she had no other income. (Tr. at 6.) She paid $225 per week for day care expenses for A.H. (Tr. at 9.) When the magistrate noted that the day care expenses appeared to be equal to or exceeded her income, Jasmyn stated that her mother helped her "a little bit" by giving her $100 every other week, and that she paid no rent because she lived at home. (Tr. at 9-11.) Jasmyn also stated that she was on her mother's insurance. (Tr. at 11.) Jasmyn brought statements from the day care center and her tax return. The magistrate noted that Jasmyn's tax return did not report any itemized deduction for child care expenses, as she had filed the return with Form 1040EZ, the IRS form that only allows a standard deduction with no itemization. (Tr. at 12.)

{¶ 7} The magistrate issued a decision on August 12, 2015, that contained a number of findings and orders. First, it stated that Darius' objection was dismissed "due to his failure to appear," and that Jasmyn's objection was granted. (Mag.'s Decision at 1.) Second, the decision modified the effective date of the child support order to

November 20, 2014. Third, the monthly amount owed by Darius was lowered to $312.02 per month during months in which A.H. was covered under private health insurance and $357.50 per month during periods of non-coverage. Fourth, in an attached child support computation worksheet, Jasmyn's annual gross income was recalculated as $17,888.00, and the adjustment to her income for annual child care expenses was entirely eliminated. (Mag.'s Decision at 2.)

{¶ 8} Jasmyn objected to the magistrate's decision on three grounds. First, she argued that it was an error to omit the child care expenses in the new computation. Jasmyn argued that the magistrate had "refused to consider the daycare statements" that she had brought to the hearing as evidence of child care expenses. (Aug. 24, 2015 Obj. to Mag.'s Decision.) Second, Jasmyn argued that the child support order should have been retroactively dated to January 26, 2012, the date of A.H.'s birth, and not November 11, 2014, because she had contacted CSEA before A.H. turned three and Darius had known that he was A.H.'s father since the child's birth. Third, Jasmyn objected to the recalculation of her income, which raised it to $17,888.00. She noted that she was a full-time university student who also worked part-time, and that the pay stub she had provided to the magistrate stated that her cumulative pay as of July 25, 2015 was only $5,983.80. *Id.*

{¶ 9} The trial court held a hearing on Jasmyn's objections on March 2, 2016, at which she was represented by counsel. After her attorney summarized Jasmyn's objections to the magistrate's decision, copies of her W2s and documentation of child care expenses were introduced as exhibits. (Mar. 2, 2016 Tr. at 10.) Jasmyn testified once again. The trial court asked her about "the apparent disparity" between her income and the amount of child care expenses she claimed to be paying. (Tr. at 12.) Jasmyn testified that while her income went towards day care expenses, she had also begun to receive some child support payments, and her mother sometimes assisted her as well. (Tr. at 12-13.) The trial court asked Jasmyn how much money her mother gave her to assist with child care expenses. When Jasmyn replied that she couldn't "say off the top of [her] head," the trial court judge said that she did not need to provide a figure. (Tr. at 13.)

{¶ 10} In a decision dated June 1, 2016, the trial court overruled Jasmyn's objections and approved and adopted the magistrate's decision in part. In the decision, the trial court made three key rulings. First, the trial court declined to use any child care

expenses to reduce the amount of Jasmyn's income, determining that Jasmyn had "no personal expense for daycare for the minor child." (June 1, 2016 Entry at 2.) The trial court reached this conclusion based on the following findings: Jasmyn's "mother pays the child care," Jasmyn's tax return did not show a deduction for child care expenses, and Jasmyn had provided "no canceled checks or money order stubs to prove that she is the person actually paying for the child's daycare." *Id.*

{¶ 11} Second, the trial court declined to retroactively date the child support order under R.C. 3111.13(F)(3)(a) because Jasmyn had failed to "provide any evidence that she had out of pocket medical expenses" or lost wages "due to the pregnancy," stating that it could not "make a retroactive award for expenses that were not actually incurred." (Entry at 3.)

{¶ 12} Third, the trial court overruled Jasmyn's objection to the calculation of her income, reasoning as follows:

> Defendant testified that her income was $8.60 per hour and that she works 25-35 hours per week plus commission. She also testified that her mother gives her $100 every two weeks which is $2,600 per year. Also, Defendant testified that her mother pays $225.00 per week for her child care which is $11,700 per year. Defendant's mother is also paying her health insurance and providing her with housing. She does not have any disability that would prohibit her from working full-time. Wages may be imputed to full-time when there is no disability or impediment to working full time. The magistrate calculated her earnings at $17,888.00. She did not err in using $17,888.00 per year.

*Id.*

{¶ 13} Jasmyn now appeals, and asserts the following four assignments of error:

> [I.] The Trial Court's adoption of the Magistrate's Decision, filed on August 12, 2015, constitutes an abuse of discretion by failing to make findings of fact that are consistent with the uncontroverted testimony and evidence that was admitted by the Trial Court.
>
> [II.] The Trial Court's adoption of the Magistrate's Decision, filed on August 12, 2015, constitutes an abuse of discretion by failing to find that Appellant paid for child care expenses during 2015.
>
> [III.] The Trial Court's adoption of the Magistrate's Decision, filed on August 12, 2015, constitutes reversible error because

the Trial Court misinterpreted and misapplied R.C. 3111.13(F)(3)(a).

[IV.] The Trial Court's adoption of the Magistrate's Decision, filed on August 12, 2015, constitutes an abuse of discretion by miscalculating Appellant's income for 2015.

## II. STANDARD OF REVIEW

{¶ 14} An abuse of discretion standard applies to appellate review of "matters concerning child support," including its calculation under R.C. Chapter 3119. *Booth v. Booth*, 44 Ohio St.3d 142, 144 (1989); *see also Winkler v. Winkler*, 10th Dist. No. 02AP-937, 2003-Ohio-2418, ¶ 55. An " 'unreasonable, arbitrary or unconscionable ' " action by the trial court amounts to an abuse of discretion. *Booth* at 144, quoting *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

## III. FIRST ASSIGNMENT OF ERROR

{¶ 15} In her first assignment of error, Jasmyn asserts that the trial court abused its discretion by making four factual findings that were inconsistent with the testimony and evidence. First, Jasmyn points to the trial court's statement that she "appeared *pro se*" at the March 2, 2016 hearing where she was represented by counsel. Because Jasmyn did appear before the magistrate without counsel, the trial court may have intended the statement to refer to her earlier appearance. However, even if the statement was technically incorrect, the trial court's description of Jasmyn as pro se does not qualify as a finding of fact that is material to any issue in the child support order. Jasmyn has not explained how this misstatement affected any substantive issue relevant to her appeal, such as the trial court's calculation of income or the support amount.

{¶ 16} The three other findings that Jasmyn points to, however, do raise such concerns. The trial court's decision stated that Jasmyn's mother "pays the child care," while Jasmyn herself "has no personal expense for daycare for the minor child." (Entry at 2.) The decision also states that Jasmyn "testified that her mother pays $225.00 per week for her child care which is $11,700.00." (Entry at 3.) The record does not support these findings. Jasmyn testified before the magistrate that she, not her mother, paid $225 per week for day care expenses. At the later hearing, Jasmyn stated that her income from the part-time job went towards this expense, with some assistance from her mother and recent child support payments. While Jasmyn could have been more clear in her testimony or provided better supporting documentation, there is no support in the record

for the trial court to find that Jasmyn had "no personal expense" for child care, or that her mother paid the entire amount of those costs.

{¶ 17} Jasmyn also faults the trial court for failing to consider the fact that she is a full-time student when it found that there was no impediment to her working full-time. Jasmyn's objection to the magistrate's decision urged the trial court to consider that fact, yet the trial court's entry failed to mention it at all.

{¶ 18} Finally, Jasmyn points to a discussion of the medical expenses pertaining to A.H.'s birth that she argues are "irrelevant to this matter." (Appellant's Brief at 14.) Specifically, the trial court faulted Jasmyn for not producing evidence of such expenses when ruling on her request to retroactively date the child support order. We will reserve discussion of this issue for the third assignment of error, which concerns that particular ruling, and note here only that the trial court's statement did not constitute a finding of fact. Rather, the trial court stated that there was no evidence in the record of such expenses, which was not an incorrect characterization of the record.

{¶ 19} In short, we conclude that the trial court abused its discretion when it made findings of fact regarding the child care expenses that were not supported by the record and ignoring Jasmyn's status as a full-time student. These findings were material to the child support order. The first assignment of error is sustained.

## IV. SECOND ASSIGNMENT OF ERROR

{¶ 20} In her second assignment of error, Jasmyn argues that the trial court erred by failing to find that she had paid for child care expenses in 2015.

{¶ 21} As previously discussed, the trial court abused its discretion when it found that Jasmyn's mother had paid the child care expenses in their entirety by mischaracterizing the substance of Jasmyn's testimony. The trial court also faulted Jasmyn for not providing "canceled checks or money order stubs to prove" that she paid for the expenses. (Entry at 2.) However, Jasmyn introduced a statement from the child care center that itemized over one year's worth of the charges that had been paid. (Def.'s Ex. C.) The weekly amount of child care expenses charged was consistent with Jasmyn's testimony, and the statement shows that the center directly billed Jasmyn in her own name for the day care charges. *Id.*

{¶ 22} In spite of Jasmyn's testimony and the expense statement, the trial court interpreted Jasmyn's failure to itemize her child care expenses on her income tax return as evidence that she had not paid any such expenses:

> Defendant has no personal expense for daycare for the minor child. She offered her income tax return for review and she does not take a child care deduction on her Income. Defendant filed Tax Form 1040EZ. The Court can only allow a deduction for expenses that Defendant personally incurs and can provide evidence that she paid.

(Entry at 2.)

{¶ 23} Yet the tax return that Jasmyn filed, the 1040EZ, does not allow a filer to itemize deductions or claim anything other than the standard deduction. IRS Pub. 17 at 6-7 (2016). Jasmyn's use of the 1040EZ form is not proof that she did not, in fact, pay for child care expenses. At most, it is probative of the amount of her income, tax liability, and the fact that she did not itemize her deductions when filing. The trial court would have acted within its discretion if it had deducted the tax credit that Jasmyn would have received had she itemized the child care expenses from her gross income. *See* R.C. 3119.022 (providing, at item 19, a line to list any "[a]nnual child care expenses for children who are the subject of this order that are work-, employment training-, or education-related, as approved by the court or agency (deduct tax credit from annual cost, whether or not claimed)."). However, inferring from this tax form that Jasmyn paid no such expenses while ignoring other evidence in the record of payment was arbitrary and, therefore, an abuse of discretion.

{¶ 24} Furthermore, even if Jasmyn's mother had paid the entirety of the child care expenses, there is "no authority, statutory or otherwise, *requiring* child care expenses to be paid directly from the parent's income." (Emphasis sic.) *Johnson v. McConnell*, 2d Dist. No. 24115, 2010-Ohio-5900, ¶ 31. In *Johnson*, the trial court refused a mother's request to factor child care expenses in a child support calculation because it was "unable to determine the source of [the] funds" for the expenses. *Id.* at ¶ 30. The trial court believed that the mother was "entitled to have her daycare expenses considered only if she could prove that she had paid for those expenses from her income or savings." *Id.* The Second District Court of Appeals rejected the burden imposed on the mother where no statute or other authority required her to prove that she alone had paid for daycare: "Although the source of funds to pay the daycare expenses may be considered by the trial

court in the court's exercise of its discretion, the fact that the parent may be receiving financial assistance from third parties for daycare expenses does not disqualify those expenses from inclusion in the child support calculation." *Id.* at ¶ 31. Here, the trial court imposed the same burden on Jasmyn when it asserted that it could "only allow a deduction for expenses that Defendant personally incurs and can provide evidence that she paid." (Entry at 2.) As in *Johnson*, the trial court erred as a matter of law by holding Jasmyn to this standard, in addition to abusing its discretion by ignoring the evidence in the record regarding Jasmyn's payment of the expenses. The second assignment of error is sustained.

## V. THIRD ASSIGNMENT OF ERROR

{¶ 25} Jasmyn's third assignment of error asserts that the trial court misapplied R.C. 3111.13(F)(3)(a), the statute governing the applicable date of child support orders. According to Jasmyn, the trial court overruled her request based on an erroneous application of the statute's provision regarding birthing expenses, which were never at issue in this case.

{¶ 26} R.C. 3111.13(F)(3)(a) states the following:

> A court shall not require a parent to pay an amount for that parent's failure to support a child prior to the date the court issues an order requiring that parent to pay an amount for the current support of that child or to pay all or any part of the reasonable expenses of the mother's pregnancy and confinement, if both of the following apply:
>
> (i) At the time of the initial filing of an action to determine the existence of the parent and child relationship with respect to that parent, the child was over three years of age.
>
> (ii) Prior to the initial filing of an action to determine the existence of the parent and child relationship with respect to that parent, the alleged father had no knowledge and had no reason to have knowledge of his alleged paternity of the child.

{¶ 27} Jasmyn's sole objection to the CSEA's child support order was that it should have been retroactively dated to A.H.'s birth because Darius had known A.H. was his child. (Answer.)

{¶ 28} The trial court's decision stated that Jasmyn had to "prove both factors" under R.C. 3111.13(F)(3)(a). The trial court first ruled that Jasmyn had satisfied the first one by filing a request for child support before A.H.'s third birthday. The trial court then

ruled that Jasmyn could not satisfy the second prong of the statute because she had not provided any evidence that she had paid medical expenses for A.H.'s birth:

> The Court can only deduce from her testimony that the birth of the child was covered by the health insurance policy and Defendant had no personal expenses for the birth of the child. The Court cannot make a retroactive award for expenses that were not actually incurred. No evidence was submitted during the hearing that Defendant was working or had lost wages as a result of her pregnancy and confinement. * * * Since no evidence of reasonable expenses for mother's pregnancy and confinement were shown, the Court OVERRULES and DENIES this Objection.

(Entry at 3.)

{¶ 29} The trial court appears to have misread the statute and misunderstood the relief that Jasmyn had requested. R.C. 3111.13(F)(3)(a) recognizes that there are two types of potentially retroactive child support orders: those for "the current support of [the] child," and those for "all or any part of the reasonable expenses of the mother's pregnancy and confinement." Here, only the first type of order was at issue. Pregnancy expenses were never the subject of the CSEA's order or Jasmyn's objection.

{¶ 30} Furthermore, the trial court failed to apply the proper test when considering Jasmyn's request to retroactively date the child support order. The section applied by the trial court, R.C. 3111.13(F)(3)(a), prevents a court from effecting a retroactive order of child support when: (1) a child is over three years of age at the time an action is filed "to determine the existence of the parent and child relationship with respect to that parent;" and (2) before such filing, "the alleged father had no knowledge and had no reason to have knowledge of his alleged paternity of the child." Thus, R.C. 3111.13(F)(3)(a) is typically invoked by an "alleged father" disclaiming any knowledge of his paternity of the child in question. *See, e.g.*, *Hills v. Patton*, 3d Dist. No. 1-07-71, 2008-Ohio-1343, ¶ 28 (affirming trial court's decision to deny father's motion to dismiss mother's claim for back child support under R.C. 3111.13).

{¶ 31} When considering Jasmyn's request to retroactively date the child support order to A.H.'s birth, the trial court should have applied R.C. 3111.13(F)(2). *See Fraelich v. Parrish*, 9th Dist. No. 14CA010684, 2016-Ohio-445, ¶ 10 (describing the application of R.C. 3111.13(F)(2) as "mandatory" when a court considers "whether to award support for the period prior to a determination of parentage"). The statute provides that:

> When a court determines whether to require a parent to pay an amount for that parent's failure to support a child prior to the date the court issues an order requiring that parent to pay an amount for the current support of that child, it shall consider all relevant factors, including, but not limited to, any monetary contribution either parent of the child made to the support of the child prior to the court issuing the order requiring the parent to pay an amount for the current support of the child.

R.C. 3111.13(F)(2).

{¶ 32} R.C. 3111.13(F)(2) "does not institute a per se rule that requires or disallows awards of retroactive child support. Instead, the statute vests the trial court with the discretion to determine whether a parent must pay a retroactive amount of child support, and specifies the factors the court can consider in making its decision." *In re Evans*, 10th Dist. No. 01AP-1328, 2002-Ohio-3555, ¶ 12. However, we have previously held that "[d]emonstrating that a father voluntarily provided support prior to a child support order, and that the child's financial needs were met during that pre-order period, can be sufficient evidence to relieve a father of retroactive child support." *Id.* at ¶ 16. Thus, on remand, evidence of Darius' previous support contributions would be relevant to this analysis.

{¶ 33} The third assignment of error is sustained.

## VI. FOURTH ASSIGNMENT OF ERROR

{¶ 34} In her fourth assignment of error, Jasmyn asserts that the trial court abused its discretion by miscalculating her 2015 income. According to Jasmyn, the trial court failed to consider the factors set forth under R.C. 3119.01(C)(11) that a court must consider when imputing income to a parent, and erroneously included contributions from her mother as a portion of her gross income.

{¶ 35} For purposes of a child support calculation, income is defined in one of two ways. First, a fully employed parent's income is defined as his or her gross income. R.C. 3119.01(C)(5)(a). "Nonrecurring or unsustainable income or cash flow items," which are defined as "an income or cash flow item the parent receives in any year or for any number of years not to exceed three years that the parent does not expect to continue to receive on a regular basis," are not included in gross income. R.C. 3119.01(C)(7)(e) & 3119.01(C)(8).

{¶ 36} Second, if a parent is "unemployed or underemployed," income is equal to "the sum of the gross income of the parent and any potential income of the parent."

R.C. 3119.01(C)(5)(b). A court or child support agency must find that the parent "is voluntarily unemployed or voluntarily underemployed" in order to impute potential income to the parent. R.C. 3119.01(C)(11). To determine the amount, the statute provides the following:

> Imputed income that the court or agency determines the parent would have earned if fully employed as determined from the following criteria:
>
> (i)  The parent's prior employment experience;
>
> (ii)  The parent's education;
>
> (iii)  The parent's physical and mental disabilities, if any;
>
> (iv)  The availability of employment in the geographic area in which the parent resides;
>
> (v)  The prevailing wage and salary levels in the geographic area in which the parent resides;
>
> (vi)  The parent's special skills and training;
>
> (vii)  Whether there is evidence that the parent has the ability to earn the imputed income;
>
> (viii)  The age and special needs of the child for whom child support is being calculated under this section;
>
> (ix)  The parent's increased earning capacity because of experience;
>
> (x)  The parent's decreased earning capacity because of a felony conviction;
>
> (xi)  Any other relevant factor.

R.C. 3119.01(C)(11)(a).

{¶ 37} A trial court abuses its discretion if it does "not make an explicit finding that [the parent] was voluntarily unemployed or underemployed prior to imputing potential income to [the parent]" and fails to consider the R.C. 3119.01(C)(11) factors. *Apps v. Apps*, 10th Dist. No. 02AP-1072, 2003-Ohio-7154, ¶ 49. Here, the trial court did not make a specific determination that Jasmyn was voluntarily underemployed before imputing potential income to her. In the section of its decision overruling Jasmyn's objection to the

magistrate's calculation of her income, the trial court simply stated that she "does not have any disability that would prohibit her from working full-time. Wages may be imputed to full-time when there is no disability or impediment to working full-time." (Entry at 3.) The trial court did not consider Jasmyn's status as a full-time student. Nor was there any discussion of the R.C. 3119.01(C)(11) factors, other than the observation that Jasmyn was not disabled. Furthermore, the imputed income was also partially based on the trial court's erroneous finding that Jasmyn's mother had paid the totality of A.H.'s child care expenses. (Entry at 3.) Given these errors, we conclude that the trial court's recalculation of Jasmyn's gross income was unreasonable and amounted to an abuse of discretion.[1] The fourth assignment of error is sustained.

## VI. DISPOSITION

{¶ 38} For the foregoing reasons, we sustain all four assignments of error and reverse and remand with instructions to properly analyze Jasmyn's request to retroactively date the child support order in accordance with R.C. 3111.13(F)(2).

*Judgment reversed; cause
remanded with instructions.*

TYACK, P.J. and BROWN, J., concur.

——————————————

---

[1] Jasmyn's sole objection to the CSEA order concerned its effective date, not the amount of support. The only party objecting to the amount was Darius, but because he failed to appear, his objection was dismissed. The CSEA's calculation is "rebuttably presumed to be the correct amount of child support due" under R.C. 3119.03. No party appeared before the trial court to rebut that presumption, yet the trial court undertook its own sua sponte review of the amount.